

**Jeffrey M. Edelson, OSB #88040**
JeffEdelson@MHGM.com
MARKOWITZ, HERBOLD, GLADE
 & MEHLHAF, P.C.
Suite 3000 Pacwest Center
1211 SW Fifth Avenue
Portland, OR 97204-3730
Tel: (503) 295-3085
Fax: (503) 323-9105

    Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

SBC GLOBAL SERVICES, INC.,
a Delaware corporation, d/b/a AT&T
GLOBAL SERVICES, o/b/o
SOUTHWESTERN BELL TELEPHONE,
L.P. d/b/a AT&T TEXAS,

                    Plaintiff,

    vs.

AFT TECHNOLOGIES, LTD., an Oregon
corporation d/b/a TELEPHONE
MANAGEMENT CORPORATION; and
TELEPHONE MANAGEMENT
CORPORATION, an Oregon corporation,

                    Defendants.

CV09No.:427    MO

**COMPLAINT**
**Breach of Contract and Quantum**
**Meruit/Unjust Enrichment**

## THE PARTIES

1.

    Plaintiff, SBC Global Services, Inc. d/b/a AT&T Global Services, o/b/o Southwestern

Bell Telephone, L.P. d/b/a AT&T Texas ("Plaintiff" or "AT&T"), by and through its

undersigned counsel, and for its Complaint against AFT Technologies, Ltd. d/b/a Telephone

**Page 1 -  COMPLAINT**

#26487

Management Corporation ("AFT"), and Telephone Management Corporation ("TMC"), states and alleges as follows:

### JURISDICTION AND VENUE

2.

Plaintiff is a corporation organized and existing under the laws of Delaware. Its principal place of business is located at 225 West Randolph Street, Chicago, IL 60606.

3.

Upon information and belief, defendant AFT Technologies, Ltd. d/b/a Telephone Management Corporation ("AFT") is a corporation organized and existing under the laws of Oregon with its principal place of business in the State of Oregon, County of Multnomah.

4.

Upon information and belief, defendant Telephone Management Corporation ("TMC") is a corporation organized and existing under the laws of Oregon with its principal place of business in the State of Oregon, County of Multnomah. AFT and TMC are collectively referred to herein as "Defendants."

5.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a) as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and it is between parties that are citizens of different states.

6.

Venue is proper in the United States District Court, District of Oregon, Portland Division as the Defendants' principal place of business is located in Portland, Oregon.

///

///

///

**Page 2 -   COMPLAINT**

## GENERAL ALLEGATIONS

### 7.

In or about November 2006, Plaintiff and AFT entered into an *AT&T Primary Rate ISDN: SmartTrunk® Individual Case Basis Service Agreement* (the "Contract") pursuant to which AT&T agreed to provide, and AFT agreed to pay for, certain telecommunications services. A copy of the Contract is attached hereto as **Exhibit A** and incorporated herein by reference.

### 8.

Pursuant to the Contract, AT&T provided AFT with telecommunication services (the "Services") in Houston, Texas and Austin, Texas under accounts numbered 713-407-2500-889 and 512-404-1000-925 (the "Accounts") from about November 2006 through September 2007.

### 9.

The Services were provided by AT&T in accordance with the Contract, and in accordance with the applicable tariff regulations found at http://www.att.com/gen/public-affairs?pid=3181 (formerly located at IP address: http://www.sbc.com/gen/public-affairs?pid=3181), which are referred to in the Contract at Page 2, Paragraph 4 "Tariff Regulations."

### 10.

Upon information and belief, AFT was administratively dissolved in or about February 2007, and thereafter continued to conduct its business under the name of AFT Technologies and/or "Telephone Management Corporation," and continued to order and receive services from AT&T as "AFT Technologies."

///

///

///

**Page 3 -   COMPLAINT**

11.

AT&T sent invoices to AFT and/or TMC on a monthly basis for the Services from about December 2006 through November 2007.

12.

Defendants have failed to pay all amounts due for Services provided pursuant to the Contract. AFT is indebted to AT&T in the principal amount of at least $256,731.38 for the Services provided and termination charges, plus additional amounts due under the Contract including, but not limited to, late fees and interest.

13.

Plaintiff has demanded payment in full for the Services provided to AFT, but has received no part of the $256,731.38 due and owing.

### FIRST CAUSE OF ACTION

(Breach of Contract)

(Against Defendant AFT)

14.

Plaintiff hereby incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 13 above.

15.

Plaintiff and AFT entered into a Contract as set forth above.

16.

AFT's refusal and failure to pay for the Services provided to it by AT&T and for other charges due under the parties' Contract, as set forth above, constitutes a breach of the Contract.

///

///

///

**Page 4 -   COMPLAINT**

17.

As a result of AFT's breach of the Contract, Plaintiff has suffered damages in the principal amount of at least $256,731.38, plus additional amounts that may be due under the parties' Contract including, but not limited to, additional termination charges, late fees and interest.

18.

Plaintiff is entitled to all amounts owed under the Contract, plus interest, costs, and attorney fees associated with AFT's breach of the Contract.

### SECOND CAUSE OF ACTION

(Quantum Meruit/Unjust Enrichment)

(Against All Defendants)

19.

Plaintiff incorporates by reference as if fully set forth herein, the allegations contained in paragraphs 1 through 13 above.

20.

Plaintiff furnished telecommunication services to AFT and/or TMC.

21.

The telecommunications services were furnished by Plaintiff with the reasonable expectation that it would be paid for the services.

22.

AFT and/or TMC requested and accepted the services expecting to pay for them, or under such circumstances that it knew, or reasonably should have known, that Plaintiff expected to be paid.

///

///

Page 5 -  COMPLAINT

23.

By failing to pay Plaintiff the sums owed to it, AFT and/or TMC have become unjustly enriched and are indebted to the Plaintiff under the theory of Quantum Meruit for a minimum of $256,731.38.

WHEREFORE Plaintiff prays for judgment as more fully set forth below:

1.      For damages in an amount to be proven at trial, including, but not limited to, $256,731.38 in unpaid usage and service charges for Plaintiff's telecommunication Services and termination charges, plus additional amounts due for termination charges, pre- and post-judgment interest, attorney fees, costs, and any other relief to which Plaintiff is entitled; and

2.      For such other and further relief as this Court may deem just and proper.

DATED this 21st day of April, 2009.

MARKOWITZ, HERBOLD, GLADE
& MEHLHAF, P.C.

By:  _____
Jeffrey M. Edelson, OSB #88040
(503) 295-3085
Of Attorneys for Plaintiff

180597

**Page 6 -  COMPLAINT**

# Exhibit A

FROM                                    (TUE)NOV  7 2006 14:17/ST. 13:44/No. 6660097986 P  1

Oct 25 06 04:12p    Fred Accuardi                              50322ɔu669              p.1

AT&T Primary Rate ISDN: SmartTrunk®     20061101-0493
ICB Service Agreement

This Primary Rate ISDN SmartTrunk® Individual: Case Basis Service Agreement ("Agreement") is entered into between SBC Global Services, Inc. dba AT&T Global Services on behalf of Southwestern Bell Telephone, L.P. dba AT&T Arkansas/AT&T Kansas/AT&T Missouri/AT&T Oklahoma/AT&T Texas ("AT&T") and AFT TECHNOLOGIES with a place of business at [4543 POST OAK PLACE DRIVE, HOUSTON, TX 77027 ("Customer") as of the date of the last signature hereto (the "Effective Date") and shall continue until the expiration of the service term chosen hereunder ("Agreement Term"). ICB pricing is offered to Customer pursuant to this agreement because of the unique size or configuration of these business services.

I.     Service: AT&T Primary Rate ISDN: SmartTrunk® Service, B-Channels, Calling Line Identification (Optional), Direct Inward Dialing (DID) Telephone Numbers – 100# Block (Optional), and Extended Metro Service (available in Texas only, optional)

II.    Service Term: 36 Months ("Term")

III.   Order Type: New Install       IV. Local Number Portability: ☐ Yes ☐ No

V.     Circuit Location Addresses and Quantity:  In accordance with the Terms and Conditions attached hereto and incorporated herein by this reference, AT&T shall furnish and Customer shall subscribe to and pay for Service provided to Customer at the following locations. (If additional space is needed, please attach on a separate page.) Services under this Agreement within the state of Missouri must be located within an AT&T Exchange listed on Exhibit 1,

|             | Quantity of Circuits per location | Service Location | State |
|-------------|-----------------------------------|------------------|-------|
| Location 1  | 8                                 | 4543 POST OAK DRIVE, HOUSTON, TX 77027 | Texas |
| Location 2  | 0                                 | Not Applicable   | [Select One] |
| Location 3  | 0                                 | Not Applicable   | [Select One] |

VI.    Service Elements and Charges: AT&T shall provide Service at the following rates and quantities:

A. Monthly Charges

| Service Elements | Total Quantity for All Locations | Unit Monthly Charge | Extended Monthly Charge |
|------------------|----------------------------------|---------------------|-------------------------|
| SmartTrunk Interface | 8 | $ 328.75 ᵗʰ | $2,830.00 |
| B-Channels (n/a for EMS B-Channels) | 184 | $ 11.75 ᵐ | $2,162.00 |
| Extended Metro Service (EMS) B-Channels, available in Texas only | 0 | $0.00 | $0.00 |
| Calling Line Identification (Caller ID) | 8 | $10.00 | $80.00 |
| DID Numbers – 100's Block | 8 | $10.00 | $80.00 |
| Total Monthly Charge | | | $4852.00 |

B. Non-recurring Charges. Standard Tariff non-recurring charges are waived under this Agreement.

SO AGREED by the parties' respective authorized signatories:

| AFT TECHNOLOGIES, LTD | AT&T GLOBAL SERVICES |
|-----------------------|----------------------|
| Customer Signature: | AT&T Signature: |
| Print Name and Title: Fred Accuardi, President | Print Name and Title: |
| Date: 10/25/06 | Date: 11-6-06 |
| Address: 4543 POST OAK DRIVE | Address: |
| Address: HOUSTON, TX 77027 | |

Mgr.

TERMS AND CONDITIONS

CONFIDENTIAL INFORMATION
This Agreement is for use by authorized employees of the parties hereto only and is not for general distribution within or outside their companies.

ISDN_PRI_ICB_Lite_SW_Agreement          Page 1 of 5                     RBOC_reg
                                                                         06/31/06 re9498

Exhibit A
Page 1 of 5

FROM                                    (TUE)NOV  7 2006 14·17/ST. 13:44/No. 6660097986 P  2

Oct 25 06 04.12p        Fred Accuardi                        503223U6S9                    p.2

### AT&T Primary Rate ISDN: SmartTrunk®
### ICB Service Agreement

The following provisions apply to the Service provided hereunder:

1. **Description of Service.**

   A. **Primary Rate ISDN: SmartTrunk®** (herein after referred to as "SmartTrunk" or "Service"): Service provides a multi-purpose high speed, multiplexed digital interface based on CCITT Integrated Services Digital Network (ISDN) standards. The circuit location must be at a valid customer premises address. A customer premises address may not be a location at a Carrier Hotel or a Co-location cage within an AT&T Central Office. SmartTrunk Service uses Primary Rate interface (PRI) technology. Service is provided where facilities are available from Customer's premises to AT&T's circuit-switched voice and circuit-switched data services via 1.544 Megabits per second (Mbps) central office (CO) termination. The CO termination connects by way of 23 64 Kbps "B" channels and one 64Kbps "D" channel. The "D" channel performs out-of-band signaling and controls the "B" channels. The transmission characteristics of this Service support 64Kbps clear channel capability and Extended Superframe Format (ESF).

   B. **Calling Line Identification (Caller ID):** Allows the number of the calling party to be delivered to the called party.

   C. **Direct Inward Dialing Telephone Numbers – 100# Block ("DID numbers" or "Service")** is furnished subject to the availability of telephone numbers. Direct Inward Dialing telephone numbers are normally provided on a consecutive number basis. AT&T retains its rights to the administration and use of telephone numbers as described in the "Rules and Regulations Applying to All Customers' Contracts" section in the applicable state General Exchange Tariff. DID numbers must be provided on all lines in an exchange access line group arranged for inward service.

2. **Term.** The Term of the Service provided hereunder will commence upon Cutover and will continue for the Service Term as listed on page 1 (the "Term"). "Cutover" occurs when the Service is first provisioned or otherwise available for Customer's use at any single Site which is estimated to be 30 days after the Effective Date of this Agreement. If Customer elects to continue the Service beyond the Term and has not entered into a new service agreement, such Service shall be furnished at then-existing Monthly tariff ("Tariff") charges unless and until Customer cancels or renews the Service.

3. **Payment of Charges for Service.** Customer shall pay the Non-recurring Charge and/or Monthly Charge as listed on page 1, which shall commence upon Cutover. The Monthly Charges specified in this Agreement shall not be subject to increases for the Term of this Agreement. Customer will pay AT&T (i) the Monthly Charges and Non-recurring Charges set forth herein, and (ii) applicable taxes, surcharges, and recovery fees (including universal service fees), and customs and duties. Except as otherwise provided herein, (i) billing commences on Cutover; (ii) payment is due within 30 days after the date of Invoice; and (iii) payment is subject to AT&T's credit requirements and AT&T may require a security deposit to ensure prompt payment. Customer will advise AT&T of any billing dispute within 30 days after receipt of invoice or the invoice shall be deemed correct. In addition to recovering attorneys' fees and costs of collection, AT&T may assess a late payment fee as specified in the Tariff.

4. **Tariff Regulations.** AT&T will, subject to the availability and operational limitations of the necessary systems, facilities, and equipment, provide the Service pursuant to the terms and conditions in the applicable Tariffs. Tariff terms and conditions can be found at http://www.abc.com/gen/public-affairs?pid=3181. In the event of a conflict between the Tariff and the terms of this Agreement, the terms of this Agreement shall control. This Agreement may be filed with the appropriate state commission. If approval is required and not obtained, then this Agreement will immediately terminate and Customer shall receive a refund of any non-recurring charge paid and pre-paid amounts for Services not received.

5. **Installation and Cutover.** Cutover of Service hereunder requires the installation of certain equipment and facilities on AT&T's side of the demarcation point. Customer shall be responsible for providing adequate space and power, as determined by AT&T, for equipment requirements at the designated locations. If Cutover is delayed due to changes, acts, or omissions of Customer, or Customer's contractor, or due to any event described in the "Excused Performance" provision of this Agreement, AT&T shall have the right to extend Cutover for a reasonable period of time equal to at least the period of such delay and consequences.

If Customer cancels this Agreement before the Service is Cutover for reasons not excused herein, Customer shall reimburse AT&T for all expenses incurred in processing the order and in installing the required equipment and facilities completed up to the date of cancellation as specified in the applicable Tariff.

All equipment, facilities and lines furnished by AT&T are the sole property of AT&T and are provided upon condition that they will be installed, relocated, removed, changed and maintained exclusively by AT&T as it deems appropriate in its sole discretion.

6. **Service and Maintenance Obligations.** AT&T represents to Customer that the Service will operate materially in accordance with the Service description set forth in the applicable tariff. If, under normal and proper use, the Service fails to

CONFIDENTIAL INFORMATION
This Agreement is for use by authorized employees of the parties hereto only and is not for general distribution
within or outside their companies.

## AT&T Primary Rate ISDN: SmartTrunk©
### ICB Service Agreement

perform substantially as specified above, and Customer notifies AT&T during the Term, AT&T shall correct such Service degradations or failures without charge to Customer in accordance with the provisions herein. Customer may report Service problems seven (7) days per week and twenty-four (24) hours per day. AT&T's repair obligation does not include damage, defects, malfunctions. service degradations or failures caused by Customer's or a third party's abuse, intentional misuse, unauthorized use or negligent acts or omissions. In addition, the foregoing repair obligation applies only if Customer provides AT&T with access on its side of the demarcation point so as to enable AT&T to perform maintenance or repair work.

In the event of an interruption in the Service, a credit allowance shall be made for the affected portion of the Service to the extent specified in the applicable tariff. THE FOREGOING REPRESENTATION IS EXCLUSIVE AND IN LIEU OF ALL OTHER REPRESENTATIONS AND WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. CUSTOMER'S SOLE AND EXCLUSIVE REMEDY AGAINST AT&T FOR LOSS OR DAMAGE CAUSED BY, OR ARISING IN CONNECTION WITH, THE PERFORMANCE OR NONPERFORMANCE OF THE SERVICE SHALL BE THE OBLIGATIONS OF AT&T AS SET FORTH IN THIS AGREEMENT.

7. Use of Service. Customer agrees that the Service will only be used to transport the voice and/or data traffic of Customer and its Affiliates, and not to originate or terminate voice traffic to bypass switched access charges as defined by applicable state and federal telecommunications law. Customer understands that this covenant is an essential part of the undertaking by AT&T herein, and that AT&T is relying upon Customer's covenant as an inducement to sell the Service. Customer agrees to compensate AT&T for any switched access charges that AT&T is obligated to pay, or entitled to collect, as a result of Customer's use of the Services, and Customer further agrees that this obligation to compensate AT&T shall not be capped or limited. As used herein the term Switched Access, generally speaking, means the charges that a long distance company is required to pay to a local telecommunications company for the termination or origination of long distance calls to or from a customer whose phone is connected to the local telecommunications company's local switching network.

8. Limitation of Liability. The liability of AT&T for damages arising out of mistakes, omissions, interruptions, delays, errors or defects in transmission occurring in the course of furnishing the Service, and not caused by the negligence of Customer, shall in no event exceed the amount specified in the Tariff. No liability shall in any case attach to AT&T for any indirect, incidental, or consequential damages, including lost profits, sustained or incurred in connection with the performance or non-performance of the Service provided hereunder regardless of the form of action, whether in contract, tort, strict liability, or otherwise, and whether such damages are foreseeable.

9. Excused Performance. AT&T shall not be liable in any way for any delay or any failure of performance of the Service or for any loss or damage due to any of the following: (a) Any causes beyond AT&T 's reasonable control, including but not limited to. fires, floods, epidemics, quarantine restrictions, unusually severe weather, strikes, embargoes, manufacturers' delays, explosions, power blackouts, wars, labor disputes, acts of civil disobedience, acts of civil or military authorities, acts stemming from governmental requirements and priorities, acts of nature, acts of public enemies, or acts or omissions of carriers; provided AT&T has exercised reasonable measures, if feasible, to mitigate such delay; (b) Any wrongful or negligent act or omission of Customer or its employees and agents; or (c) Customer's failure to provide access to Customer's premises as reasonably requested by AT&T.

10. Termination for Convenience. If Customer terminates the Service, in whole or in part, after Cutover but before the scheduled completion of the Term, then Customer shall become liable for Termination Charges equal to (i) any unpaid special construction charges or Non-recurring Charges ("NRCs") (excluding any waived charges), plus (ii) fifty percent (50%) of the Monthly Unit Charge for the terminated Service as set forth in this Agreement, multiplied by the number of months remaining in the Term of this Agreement at the point of termination. These charges shall become due and immediately payable upon termination.

11. Termination for Breach. Either party may terminate this Agreement immediately following written notice in the event the other party is in default as of any of its material obligations hereunder provided (a) the defaulting party receives notice of termination containing a reasonably complete description of the default, and (b) the defaulting party fails to cure such default within thirty (30) days of receiving such notice or ten (10) days of such notice if the default is nonpayment.

12. Assignment. Neither party shall assign any right or obligation under this Agreement without the other party's prior written consent, which consent will not be unreasonably withheld. Notwithstanding the foregoing, AT&T may assign this Agreement, in whole or in part, to any of its affiliates. Without limiting the generality of the foregoing, this Agreement shall be binding upon and shall inure to the benefit of the parties' respective successors and assigns.

CONFIDENTIAL INFORMATION
This Agreement is for use by authorized employees of the parties hereto only and is not for general distribution
within or outside their companies.

## AT&T Primary Rate ISDN: SmartTrunk®
### ICB Service Agreement

**13. Publicity.** During the Term, AT&T may refer to Customer, orally and in writing, as a customer of AT&T and may publish a press release announcing in general terms that AT&T and Customer have entered into this Agreement and AT&T may in general terms describe the activities contemplated hereunder. Any other reference to one Party by the other Party requires written consent of the first Party. Otherwise, neither party shall identify, either expressly or by implication, the other party or its corporate affiliates or use any of their names, trademarks, trade names, service marks or other proprietary marks in any advertising, press releases, publicity matters or other promotional materials without such party's prior written consent.

**14. Taxes and Additional Charges.** Customer shall remit to AT&T all applicable federal, state and local taxes and municipal and state charges which arise under this Agreement unless and to the degree Customer furnishes evidence of exemption from any such taxes and charges.

**15. Governing Law.** This Agreement and any claims arising hereunder or related hereto, whether in contract or tort, shall be governed by the domestic laws of State in which the Services are provided.

**16. Severability.** If any provision of this Agreement is held invalid or unenforceable, such provision shall be deemed deleted from this Agreement and shall be replaced by a valid and enforceable provision which so far as possible achieves the same objectives as the severed provision was intended to achieve, and the remaining provisions of this Agreement shall continue in full force and effect.

**17. Waiver.** Failure of either party to insist on performance of any term or condition of this Agreement or to exercise any right or privilege hereunder shall not be construed as a continuing or future waiver of such term, condition, right or privilege.

**18. Notices.** Notices from a party concerning this Agreement must be written and delivered to the other party (i) in person, (ii) by certified mail, return receipt requested, (iii) by traceable overnight delivery, or (iv) by facsimile, electronically confirmed and followed immediately by U.S. Mail. A signed receipt shall be obtained where a notice is delivered in person. Notices to Customer shall be sent to the address on the front page and notices to AT&T shall be sent to AT&T Contract Management at the address below. Notice will be effective upon delivery.

**19. Confidentiality.** Each party shall treat as confidential all information and any material disclosed to it by the other party that (i) if in tangible form is clearly labeled or otherwise designated as "Confidential," "Proprietary," or "Private" or (ii) if oral or visual, is identified as Confidential, Proprietary or Private on disclosure (all hereinafter referred to as "Confidential Information").

**20. Indemnification.** Each party will defend, indemnify and hold harmless the other party, its agents and employees against all claims by third parties (including legal fees and expenses) arising in whole or substantial part out of that party's negligent acts or omissions under this Agreement that result in personal injury or property damage. The indemnified party will promptly notify the indemnifying party of any claim. The indemnifying party shall assume and have sole control of the defense of such claim. This obligation to indemnify shall survive termination of this Agreement.

**21. Entire Agreement.** This Agreement and the applicable tariffs are the complete agreement between the parties and supersede any discussions, representation or proposals, written or oral, concerning the Service. This Agreement may not be modified except by a writing signed by both parties.

| This section for internal use only | |
|---|---|
| Branch Office: | AT&T Business Solutions Center Location: |
| Sales Contact: | |
| Phone: | Program Code:    [Select One] |
| Fax: | Sales Code: |

**AT&T Sales Representative:**
Mail Customer Signed Original and Approved Price Quote to:
**AT&T Contract Management:**
817 N. Loop, 2nd floor
Austin, TX 78756

*CONFIDENTIAL INFORMATION*
*This Agreement is for use by authorized employees of the parties hereto only and is not for general distribution within or outside their companies.*

ISDN_PRI_ICB_Lite_5Yr_Agreement                 Page 4 of 5                          RSOC_reg
                                                                                     05/3 1/06 rb9498

FROM                                              (TUE)NOV  7 2006 14:18/ST. 13:44/No. 6660097986 P  5

Ord 26 06 04 14p    Fred Acouardi                        503223u669              p.5

## AT&T Primary Rate ISDN: SmartTrunk®
### ICB Service Agreement

#### Exhibit 1

##### Missouri Exchanges where Service may be provided:

| | |
|---|---|
| Antonia | Kansas City (1) |
| Bonne Terre | Lake of the Ozarks-Osage Beach |
| Camdenton | Manchester |
| Cape Girardeau | Marble Hill |
| Chesterfield | Maxville |
| Claver | Monett |
| Eldon | Nevada |
| Eureka | Pacific |
| Farmington | Perryville |
| Fenton | Pond |
| Festus-Crystal City | Poplar Bluff |
| Flat River | Scott City |
| Fredericktown | Sedalia |
| Fulton | Sikeston |
| Grain Valley | Smithville |
| Gravois Mills | Springfield (2) |
| Greenwood | St. Charles |
| Harvester | St. Genevieve |
| Herculaneum-Pevely | St. Joseph |
| High Ridge | St. Louis (3) |
| Imperial | Valley Park |
| Jackson | Washington |
| Joplin | |

(1) Kansas City Principal, including:

| MCA-1 Zones | MCA-2 Zones |
|---|---|
| Gladstone | Belton |
| Independence | Blue Springs |
| Parkville | East Independence |
| Raytown | Lees Summit |
| South Kansas City | Liberty |
| | Nashua |
| | Tiffany Springs |

(2) Springfield Principal, including:

MCA-1 Zones
Fair Grove
Nixa
Republic
Rogersville
Strafford
Willard

(3) St. Louis Principal, including:

| MCA-1 Zones | MCA-2 Zones |
|---|---|
| Ferguson | Bridgeton |
| Ladue | Creve Coeur |
| Mehlville | Florissant |
| Overland | Kirkwood |
| Riverview | Oakville |
| Sappington | Spanish Lake |
| Webster Groves | |

**CONFIDENTIAL INFORMATION**
This Agreement is for use by authorized employees of the parties hereto only and is not for general distribution within or outside their companies.

ISDN_PRI_ICB_Lic_SW_Agreement          Page 5 of 5          RBOC_m3
                                                            05/31/06 rb9485

Exhibit A
Page 5 of 5